United States District Court

for the
Southern District of Florida

| | |
|---|---|
| Naval Logistic, Inc., *doing business as* Middle Point Marina, Plaintiff <br><br> v. <br><br> M/V Family Time, *in rem*, and Andrew Vilenchik, *in personam*, Defendants. | Civil Action No. 23-22379-Civ-Scola <br><br><br> **In Admiralty** |

### Order on Motion for Interlocutory Sale

This matter is before the Court on the Plaintiff's motion for interlocutory sale of the Defendant vessel in this admiralty action, the M/V Family Time. (ECF No. 41.) The owner of the vessel, Commercial Holdings Group, Inc., and the named in personam Defendant, Andrew Vilenchik, have responded in opposition[1] (ECF No. 45), and the Plaintiff has filed a reply (ECF No. 47.) The Court has carefully reviewed the record, the parties' briefing, and the applicable law, and is otherwise fully advised. The Court **grants** the Plaintiff's motion for the reasons described below. (**ECF No. 41**.)

**1. Background**

The Plaintiff, Naval Logistics, Inc., doing business as Middle Point Marina, filed this action on June 27, 2023 to enforce a maritime lien for repairs made to the vessel M/V Family Time, a 34' Rinker owned by Commercial Holdings Group Inc. ("CHG"), whose principal is Defendant Andrew Vilenchik. (*See* Compl., ECF No. 1.) Specifically, the complaint sought $2,326.18 plus interest for necessaries provided to the vessel, or alternatively, for a salvage award of $20,000 for preventing the vessel from sinking. (*Id.*)

The Plaintiff has possessed the vessel since May 22, 2023, when Vilenchik brought it to the marina for repairs. According to the Plaintiff, the vessel's condition was significantly worse than the Defendant had disclosed and therefore required additional repairs. (*Id.* ¶¶ 17-28.) Defendant Vilenchik filed an answer and affirmative defenses, arguing in large part that the Plaintiff should be barred from recovery because Plaintiff's negligence exacerbated the damage to the vessel. (*See generally* ECF No. 9.) On September 1, 2023, the

---

[1] The Court refers to Commercial Holdings Group, Inc. and Vilenchik collectively as "CHG" herein.

Court granted the Plaintiff's motions for issuance of a warrant in rem and to appoint Middle Point Marina as the substitute custodian of M/V Family Time. (ECF Nos. 12-14.) The vessel was arrested on September 7, 2023. (ECF No. 15.) M/V Family Time remains at Middle Point Marina, and the vessel has been accruing storage charges of $135 per day. According to the Plaintiff, the total amount of costs accrued as of February 2, 2024 was $23,704.79, excluding the salvage award claim for "saving the Vessel from a maritime peril." (Reply, ECF No. 47 at 3.) The total as of the date of this order is easily over $25,000.

Middle Point Marina now moves for interlocutory sale of the vessel because the costs of daily storage and any maintenance needed are disproportionate to the vessel's value and the owner has unreasonably delayed in securing the vessel's release. (*Id.*)

### 2. Legal Standard

Pursuant to Supplemental Rule for Admiralty or Maritime Claims E(9)(a)(i), on a party's application, "the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:

> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or disproportionate; or
> (C) there is an unreasonable delay in securing release of the property."

"A party need only demonstrate that one of these conditions is present to justify an interlocutory sale of the vessel." *Moore v. M/V Sunny USA*, No. 18-cv-81181, 2019 WL 10784577, at *1 (S.D. Fla. Feb. 21, 2019) (Bloom, J.) (quoting *20th Century Fox Film Corp. v. M/V Ship Agencies*, 992 F. Supp. 1434, 1437 (M.D. Fla. 1997) (cleaned up)). "[T]he Rule focuses entirely on avoiding the recognized complications associated with maintaining a vessel under arrest." *Regions Bank v. M/Y Royal Indulgence*, No. 3:10cv100, 2010 WL 4595792, *3 (N.D. Fla. Oct. 3, 2010).

### 3. Analysis

Middle Point Marina argues that the interlocutory sale of M/V Family Time is justified because two of the three grounds for sale under Supplemental Rule E(9) are satisfied.

First, Middle Point contends that CHG has unreasonably delayed the release of M/V Family Time because almost six months have passed since its arrest on September 7, 2023, which is well past the four months that courts generally consider sufficient for interlocutory sale, and CHG has not made an effort to post security. (Mot., ECF No. 41 at 5-6.) In response, CHG claims that Middle Point inaccurately characterizes the caselaw, relying in large part on a 2008 case where a three-month delay was found insufficient to justify an interlocutory sale. *See Gyasi v. M/V ANDRE*, No. 07-23282-CIV, 2008 WL 906761, at *2 (S.D. Fla. Apr. 1, 2008) (Torres, Mag. J.).

But as CHG acknowledges by the cases it cites (Resp., ECF No. 45 at 4), courts do treat four months as the rule of thumb for unreasonable delay in securing a defendant vessel, unless unique factual circumstances justify the delay. *See Bartell Hotels v. S/L Talus*, 445 F. Supp. 3d 983, 988 (S.D. Cal. 2020). CHG offers no factual circumstances that would allow the Court to conclude that a sale is unjustified as we approach the six-month mark of the vessel's arrest. *See id.* (collecting cases and concluding that nearly six months without an attempt to secure the vessel was unreasonable delay); *E.N. Bisso & Son, Inc. v. M/V BOUCHARD GIRLS*, 482 F. Supp. 3d 527, 532-33 (E.D. La. 2020) ("Generally, defendants are given at least four months to post security for a vessel to ensure its release. . . . It would strain credulity for the Court to ignore the fact that the Vessels have been under arrest [for approximately eight months].") Here, almost six months have passed since arrest (and over eight months since the vessel has been in Middle Point's custody) without sign of CHG securing the M/V Family Time or explanation for the delay. Interlocutory sale is therefore appropriate due to unreasonable delay in the owner securing the M/V Family Time.

Interlocutory sale is warranted by the establishment of just one of the conditions laid out in Supplemental Rule E(9), but the Court will address Middle Point's second argument in the interest of thoroughness. Middle Point argues that in addition to the unreasonable delay, the expense of keeping M/V Family Time at the marina is excessive and disproportionate because the vessel is estimated to be worth between $50,000 and $99,000 based on online listings of similar boats and is in a "state of disintegration and disrepair" that is likely to continue to worsen. (Mot., ECF No. 41 at 3.) Allowing additional accrual of costs in addition to the approximately $25,000 that has already accrued would be disproportionate, according to Middle Point. CHG disagrees, claiming that Middle Point has not provided sufficient evidence of the vessel's value and therefore cannot establish that the continuing costs associated with storing the vessel are disproportionate. (Resp., ECF No. 45.)

"When considering whether costs are excessive or disproportionate, Courts often weigh the costs against the value of the vessel or the amount of the claims against the vessel." *E.N. Bisso & Son, Inc.*, 482 F. Supp. 3d at 532. Here, the monthly cost of maintaining the vessel is at least $4,000, and Middle Point claims that the vessel's value is between $50,000 and $99,000 based on online sales listings. (Reply, ECF No. 47 at 3.) CHG disputes the sufficiency of Middle Point's evidence but does not argue that the vessel is worth over $100,000 (the maximum supported by the research conducted by Middle Point), nor does it provide its own evidence that the vessel is worth more. Weighing the monthly costs of at least $4,000 against the vessel's value, even if at the high end of Middle Point's estimate, the expense of maintaining the vessel is disproportionate, in particular in light of the costs that have already accrued since the vessel's arrest in September. *See Caterpillar Fin. Services Corp. v. Coleman*, 99–03821 CM RZX, 1999 WL 33218595, at *2 (C.D. Cal. Aug. 19, 1999) (finding that the "expense of keeping the [Defendant Vessel] in custody, specifically $1,400.00 per month, . . . appears to be excessive"); *Merchants Nat. Bank of Mobile v. Dredge General G.L. Gillespie,* 663 F.2d 1338, 1341-1342 (5th Cir. 1981) (interlocutory sale warranted where vessel accrued $17,000 per month costs and claimants delayed eight months in attempting to secure release); *see also Ferrous Financial Services Co. v. O/S Arctic Producer,* 567 F. Supp. 400, 401 (W.D. Wash. 1983) (finding expense excessive and delay unreasonable where cost of maintaining the vessel was $166,000 per year and defendant made no attempt to secure its release for four months). The interlocutory sale is therefore also justified on the basis of the expense of storing it.

Finally, the Court agrees with Middle Point in discarding CHG's argument that allowing interlocutory sale will prejudice its counterclaim, which CHG initially failed to file by mistake.[2] The proceeds of the sale will be available for satisfaction of the parties' claims. "The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the *in rem* process." *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983). This is particularly true where the sale of the vessel will minimize storage costs that may end up exceeding the value of the vessel if stored with the substitute custodian for the duration of the proceedings. The Plaintiff has therefore established that interlocutory sale of the M/V Family

---

[2] CHG's motion for leave to file the counterclaim is currently pending, and nothing herein should be understood to grant or deny the motion. (ECF No. 46.)

time is justified under Supplemental Rule for Admiralty or Maritime Claims E(9).

### 4. Conclusion

For these reasons, the Court **grants** the Plaintiff's motion for interlocutory sale of the M/V Family Time (**ECF No. 41**) and **orders and adjudges** as follows:

1. The United States Marshal is directed to sell, to the highest bidder at public auction, the M/V Family Time, her engines, tackle, boats, appurtenances, etc., on or before March 26, 2024.
2. The United States Marshal is directed to prepare and cause to be published the Notice of Sale of Vessel, in the usual form as used by the United States Marshal for vessel sales in this District and incorporating the provisions of this Order.
5. The Notice of Sale shall be published on at least two (2) different days, the first publication shall be at least fourteen (14) days prior to the date of sale, and the second at least seven (7) days prior to the date of the sale, pursuant to Local Admiralty Rule E(16)(b). The cost of publication shall construe the first charge against the proceeds of any claim.
3. The United States Marshal or the Substitute Custodian appointed by the Court, at the request of any interested person, shall grant permission to said person or his representative to visit, board, inspect, examine, and survey the M/V Family Time at its current location or any other place to which it may be moved prior to the sale during the daylight hours of any day up to twenty-four (24) hours before the scheduled sale date, and provided that the same shall be done at the sole expense and risk of said interested person or his representative.
4. The Court shall retain jurisdiction over the Parties and subject matter herein for the purpose of considering confirmation of the expected sale of the in rem Defendant by the United States Marshal.
5. The Vessel's sale shall be "as is, where is" and free and clear of all liens and encumbrances, and pre-existing claims on the vessel, whether recorded or otherwise.
6. The sale of the Vessel shall be conducted pursuant to Local Admiralty Rule E(17) of the Southern District of Florida.
7. The Plaintiff is directed to serve a copy of this Order on the United States Marshal.

**Done and ordered** at Miami, Florida on February 27, 2024.

_____
Robert N. Scola, Jr.
United States District Judge