United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Naval Logistic, Inc., *doing business as* Middle Point Marina, Plaintiff<br><br>v.<br><br>M/V Family Time, *in rem*, and Andrew Vilenchik, *in personam*, Defendants. | Civil Action No. 23-22379-Civ-Scola<br><br>**In Admiralty** |

### Order on Cross Motions for Summary Judgment

This matter is before the Court on the parties' cross motions for summary judgment. The Plaintiff filed a motion for summary judgment (ECF No. 71) and statement of material facts (ECF No. 72), to which the Defendants responded (ECF Nos. 80, 82), and the Plaintiff replied (ECF Nos. 85, 86). The Defendants also filed a motion for summary judgment (ECF No. 73) and statement of material facts (ECF No. 74), to which the Plaintiff responded (ECF Nos. 78, 79), and the Defendants replied (ECF No. 87). The Court has reviewed the briefing, the record, the relevant legal authorities, and is otherwise fully advised. For the reasons discussed below, the Court **grants** the Plaintiff's motion (**ECF No. 71**) and **denies** the Defendants' motion (**ECF No. 73**).

1. **Background**

The Plaintiff, Naval Logistic, Inc., doing business as Middle Point Marina ("MPM"), filed this action on June 27, 2023 to enforce a maritime lien on the vessel M/V Family Time, a 34' Rinker owned by Commercial Holdings Group Inc. ("CHG"), whose principal and authorized representative is Defendant Andrew Vilenchik. (*See* Compl., ECF No. 1.) The Plaintiff has possessed the vessel since May 22, 2023, when Vilenchik brought it to the marina for repairs. Upon the vessel's arrival, Vilenchik executed a Shipyard Agreement (ECF No. 1-1) with MPM, in which he indicated that he was "Owner" of the vessel. (Defs.' Stmt. of Mat. Facts ¶¶ 6-9.) According to the Plaintiff, upon inspection, the vessel's condition was significantly worse than the Defendant had disclosed and therefore required additional repairs. (*Id.* ¶¶ 17-28.) However, once informed of MPM's proposal to expand the scope and expense of the repairs, Vilenchik declined the repairs. The vessel has remained in MPM's custody ever since and was sold in a U.S. Marshal sale on March 26, 2024. (ECF No. 61.)

The Plaintiff makes three claims in the complaint: (1) breach of maritime contract; (2) foreclosure of a maritime lien for necessaries; and (3) claim for pure salvage award. Both the Plaintiff and the Defendants have moved for summary judgment. The Court considers their motions in turn.

## 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

## 3. Analysis

### A. The Plaintiff's Motion

The Plaintiff, MPM, moves for summary judgment on counts 1 and 2 of the complaint. (*See generally* Pl.'s Mot., ECF No. 71.) In count 1, MPM claims that Vilenchik breached the parties' maritime contract by failing to timely remove the Vessel from the marina, resulting in damages for the cost of storage. (*See* Pl.'s Mot. at 7.)

"[T]he elements of a breach of a maritime contract, like any other contract, are: (1) the existence of a valid contract; (2) a material breach; and (3) damages." *Seaboard Marine Ltd., Inc. v. Trinpak Packaging Co.*, 411 F. Supp. 3d 1366, 1373 (S.D. Fla. 2019) (Smith, J.). MPM argues that there is no dispute that Defendant Vilenchik entered into the Shipyard Agreement with MPM, which provides the following:

> Upon notification that all work that has been completed by Middle Point Marina, arrangement must be made with Middle Point Marina for the removal of the Vessel from its facility within Forty-Eight (48) hours…[a]ny outstanding balances and/or unpaid invoices must be paid in full before the Vessel leaves the Marina…ANY VESSEL NOT REMOVED FROM MIDDLE POINT MARINA'S FACILITY WITHIN FORTY-EIGHT (48) HOURS FROM SUCH NOTIFICATION SHALL BE CHAGED FOR STORAGE AT THE RATE OF $3.50 PER FOOT PER DAY'S [sic] WHICH SHALL ALSO BE PAID BEFORE THE VESSEL LEAVES THE MARINA. (Shipyard Agreement, ECF No. 1-1 § 13.)

After Vilenchik refused to approve MPM's revised estimates of the cost based on the proposed additional repairs, MPM notified Vilenchik that he would need to remove the vessel by June 16, 2023. (Pl.'s Stmt. Mat. Facts ¶ 18.) Vilenchik never removed the vessel, incurring storage charges agreed to in the Shipyard Agreement. According to MPM, summary judgment is appropriate on this claim because the Agreement required Vilenchik to remove the vessel from MPM's possession and he failed to do so, incurring the storage costs set forth in the Agreement. (Pl.'s Mot. at 7.)

Second, MPM argues that the Court should grant summary judgment on the count for foreclosure of maritime lien for necessaries in the form of dry dock storage (count 2). (*See id.* at 8.) MPM requests damages and attorney's fees and costs for counts 1 and 2, plus custodia legis expenses incurred by MPM as substitute custodian. (*Id.* at 10.)

For a party to establish a claim for a maritime lien in a vessel: (1) the good or service must qualify as a "necessary;" (2) the good or service must have been provided to the vessel; (3) on the order of the owner or agent; and (4) the necessaries must be supplied at a reasonable price. *See Barcliff, LLC v. M/V Deep Blue, IMO No. 9215359*, 876 F.3d 1063, 1068 & n.5 (11th Cir. 2017). The "reasonableness" of the price is measured by whether it is "customary" and "in accord with prevailing charges for the work done and the materials furnished." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005) (cleaned up). "Accordingly, to satisfy the evidentiary burden on this

element, a plaintiff must present some modicum of evidence which compares the charges claimed with what other competitors would have charged for similar work or materials." *Id.*

MPM argues that there is no dispute as to a material fact underlying this claim either because MPM provided the "necessary" of dry dock storage to the M/V Family Time from May 22, 2023 until its arrest on September 7, 2023. (Pl.'s Mot. at 8.) Furthermore, MPM claims that it provided the storage at Vilenchik's direction and at a reasonable price because MPM charged only $2.50 per foot per day, which is lower than the amount agreed to by the parties in the Shipyard Agreement ($3.50 per foot per day). (*Id.* at 8-9; Pl.'s Stmt. Mat. Facts ¶ 18.)

Finally, MPM also argues that the Court should award damages, *custodia legis* expenses, attorney's fees and costs, and additional costs incurred from the arrest and storage of the vessel. (*See* Pl.'s Mot. at 10-13.)

The Defendants make two arguments against the Plaintiff's motion for summary judgment. First, they argue that MPM's motion must be denied because "Defendants have filed the Affidavit of Defendant VILENCHIK, in which he addresses, and disputes, the material allegations of Plaintiff's Complaint, and in so doing, creates disputed issues of material fact that require the Court to deny the Motion" and that a dispute as to material facts exists because based on Vilenchik's affidavit, "Plaintiff's employees were negligent by causing severe damage to the Defendant VESSEL, or worse, that they intentionally caused that damage . . . ." (Def.'s Resp., ECF No. 80 at 5.)

This first argument goes entirely unsupported by either legal authority or relevant citations to the record, let alone "significantly probative" evidence, and therefore does not rebut the Plaintiff's argument. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Vilenchik's affidavit, the only evidence cited, does not touch on the facts material to the Plaintiff's claims that it provided necessaries in the form of storage to the vessel and that Vilenchik violated the Shipyard Agreement by failing to remove the vessel from MPM. Nor do the Defendants attempt to argue that there is a genuine dispute over these facts in their response to MPM's motion, thereby conceding the argument. *See Jones v. Bank of Am., N.A.*, 564 Fed. App'x 432, 434 (11th Cir. 2014) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned."). The response does not address the factual allegations regarding Vilenchik's failure to remove the vessel from the marina in any form.

Second, the Defendants argue that the Court must deny MPM's motion because of its failure to address the Defendants' affirmative defenses. (Defs.' Resp. at 6.) The Defendants claim that this failure is fatal to the motion

because the Plaintiff bears the burden to show that affirmative defenses do not apply at the summary judgment stage. (*Id.*) According to the Defendants, "none of the seven affirmative defenses pled by Defendants in their Answer and Affirmative Defenses . . . were ever challenged by Plaintiff as to their legal sufficiency." (*Id.*)

In support of the proposition that the moving party bears the burden of establishing the factual or legal insufficiency of the affirmative defenses, the Defendants cite two cases from the Middle District of Florida, but also cite a case from this District that reflects the correct rule: "On a plaintiff's motion for summary judgment, the *defendant* bears the initial burden of showing that the affirmative defense is applicable." *Off. of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997) (emphasis added) (citing *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990)). "Only upon such a showing does the burden shift to [a] plaintiff regarding that affirmative defense." *Id.* (citing *Weitz*, 913 F.2d at 1552 n.13). "The reason is that the defendant bears the burden of proof on his affirmative defenses at trial." *Id.* (citing *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1550-51 (11th Cir. 1990)).

The Defendants here inaccurately assert that the Plaintiff bears the burden of rebutting the affirmative defenses and do not attempt to show that any or all of the affirmative defenses apply to either claim on which the Plaintiff seeks summary judgment. The Defendants have therefore failed to carry their initial burden, and the Plaintiff need not provide evidence establishing a genuine issue of material fact as to the affirmative defenses. Additionally, the Court notes that the Defendants' own motion does not raise the affirmative defenses either, where they would also bear the initial burden of proof to show that no genuine issue of material fact exists with respect to the affirmative defenses. *Singleton v. Dep't of Corr.*, 277 F. App'x 921, 923 (11th Cir. 2008); *see also Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 591 (11th Cir. 1994) ("Thus, by moving for summary judgment . . ., defendants thrust before the court for scrutiny not only the merits of plaintiff's evidence, but the strength of their own defense and must establish that there is an absence of any issue for jury resolution."). The Court therefore cannot conclude that any of the Defendants' affirmative defenses preclude summary judgment.

Finally, the Defendants do not address the Plaintiff's request for damages, *custodia legis* expenses, attorney's fees and costs, and additional costs incurred from the arrest and storage of the vessel, which are supported by the record and the uncontested contents of the Shipyard Agreement. The Court will therefore grant the Plaintiff's motion, but defers ruling as to the exact amounts of damages and other fees and costs owed until the conclusion

of the case in order to account for the remaining attorney's fees and any damages awarded as a result of trial on count 3.

### B. The Defendants' Motion

The Defendants move for summary judgment on two grounds. (*See generally* Defs.' Mot., ECF No. 73.) First, they argue that Defendant Vilenchik cannot be personally liable for the Plaintiffs' alleged damages, and second, that summary judgment should be granted as a sanction for spoliation of evidence.

As to the first ground, the Defendants argue that "[w]ell-established Florida law holds that the agent or authorized representative of a corporation does not thereby become personally liable for the debts or liabilities of that corporation." (Defs.' Mot. at 4.) They claim that there is no dispute over the fact that MPM knew or should have known that Commercial Holdings Group, not Vilenchik, owned the Vessel based on the "Certificate of Documentation" provided at the time the parties entered into the Shipyard Agreement. (*Id.* at 5.) Thus, the Defendants claim that MPM cannot recover against Vilenchik personally, and therefore summary judgment is proper. The Defendants cite one case in support of this argument (without providing a pinpoint citation) and "cases cited therein." (Defs.' Mot. at 4 (citing *Pelican Automotive, Inc. v. Rutigliano*, 729 So. 2d 488 (Fla. 2d Dist. Ct. App. 1999).)

This argument is clearly insufficient for a grant of summary judgment. "Under Florida law, an agent who makes a contract on behalf of an undisclosed principal is a party to the contract." *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 890 (11th Cir. 2007). Even if the Defendants had carried their initial burden, it is undisputed that Vilenchik signed the Shipyard Agreement, placing his name on the line marked "Owner." (ECF No. 1-1 at 1.) Furthermore, MPM disputes whether Vilenchik ever mentioned the true owner, Commercial Holdings Group, or gave any indication that another principal existed. (Pl.'s Resp., ECF No. 79 at 3-6.) Therefore, the Defendants have not established that there is no genuine dispute as to the facts underlying Vilenchik's personal liability for MPM's claims.

Second, the Defendants move for summary judgment on the ground that MPM spoliated evidence by failing to produce the full video recordings of MPM's premises that the Defendants requested in discovery. (Defs.' Mot. at 5.) Spoliation is the "intentional destruction of evidence or the significant and meaningful alteration of a document or instrument." *Southeastern Mechanical Services, Inc. v. Brody*, 657 F. Supp. 2d 1293, 1299 (M.D. Fla. 2009) (citing *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003)). Spoliation also includes the intentional concealment of evidence. *See Walter v. Carnival Corp.*, No. 09–20962–CIV, 2010 WL 2927962 at

*2 (S.D. Fla. July 23, 2010) (Hoeveler, J.) (citing *St. Cyr v. Flying J Inc.*, No. 3:06–cv–13–33TEM, 2007 WL 1716365 at *3 (M.D. Fla. June 12, 2007)). "To establish spoliation, the party seeking sanctions must prove several things; first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Id.* (citing *Floeter v. City of Orlando*, 2007 WL 486633, at *5 (M.D. Fla. Feb. 9, 2007).

First, it is unclear why the Court should address this alleged issue on summary judgment rather than on a motion for sanctions. Additionally, the Defendants acknowledge that they bear the burden of proof of establishing that spoliation of evidence has taken place, but then fail to cite a single piece of evidence supporting their claim that MPM has engaged in spoliation. (*See* Defs.' Mot. at 5-7.) The Defendants' "evidence" appears to be limited to Defendant Vilenchik's speculation that MPM's production of "several" videos was intentionally incomplete. (*See id.* at 6.) And finally, the Defendants acknowledge the above-mentioned requirements for a party to establish spoliation but fail to even address each requirement. The Court therefore need not consider the Defendants' argument on spoliation. The Defendants' motion for summary judgment lacks merit.

### 4. Conclusion

For the reasons stated above, the Court **grants** the Plaintiff's motion (**ECF No. 71**) and **denies** the Defendants' motion (**ECF No. 73**). This case shall remain open, as the grant of summary judgment did not resolve all of the Plaintiff's claims.

**Done and ordered**, in Miami, Florida, on August 6, 2024.

_____
Robert N. Scola, Jr.
United States District Judge